UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-23468-MC-UNA

IN THE MATTER OF THE EXTRADITION
OF ANDRES FELIPE ARIAS LEIVA

_____/

**MEMORANDUM OF LAW IN OPPOSITION TO BAIL**

The fugitive, Andres Felipe Arias Leiva (hereinafter "Arias Leiva"), was arrested on August 24, 2016 pursuant to a complaint and warrant issued by U.S. Magistrate Judge John O'Sullivan, seeking the fugitive's extradition to Colombia, pursuant to an extradition treaty between Colombia and the United States, Sept. 14, 1979, S. Treaty Doc. No. 97-8 (1981) (hereinafter, "the Treaty"), and pursuant to 18 U.S.C. 3184 et seq. Magistrate O'Sullivan signed the warrant for arrest for extradition on August 11, 2016. The fugitive is currently in the custody of the United States Marshals.

The Attorney General of Colombia charged Arias Leiva with the offenses of Embezzlement for Third Parties, in violation of Article 397 of the Colombian Criminal Code; and Conclusion of Contract without Fulfilling Legal Requirements, in violation of Article 410 of the same code. On July 26, 2011, a Colombian judge ordered the arrest and preventative detention of Arias Leiva, who was subsequently taken into custody. A judge in the Criminal Division of the Superior Court of Bogotá later overturned this order on June 14, 2013 and released Arias Leiva from custody pending trial.

Arias Leiva's trial began on June 14, 2011, and ended on February 25, 2014. On June 13, 2014, he fled Colombia by plane to the United States. On July 16, 2014, the Criminal

1

Cassation Division of the Supreme Court of Justice, in Bogota, Colombia ("Supreme Court"), issued a judgment convicting Arias Leiva of both offenses, and sentencing him to 209 months and 8 days of imprisonment. Authorities in Colombia seek the extradition of Arias Leiva for service of the sentence imposed for these offenses of conviction. Article 2 of the Treaty provides for the extradition of persons accused or convicted of these crimes. The Supreme Court of Colombia had issued a warrant for the fugitive's arrest on July 18, 2014 for this purpose.

The United States, in execution of its treaty responsibilities and acting at the request of Government of Colombia, requests that the fugitive be held without bond pending the hearing on the certification of the extradition pursuant to 18 U.S.C. 3184 et seq. and files this memorandum in support thereof.

## I.   APPLICABLE LAW

The federal statute governing extradition procedures in the United States pursuant to treaties with other nations, 18 U.S.C. §§ 3184 et seq., does not provide for bail. Further, an extradition proceeding is not a criminal case. See Kamrin v. United States, 725 F.2d 1225, 1227-1228 (9th Cir. 1984); Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 829 (11th Cir. 1993). Consequently, the Bail Reform Act, Title 18 U.S.C. §§ 3141 et seq., and its criteria governing the allowance and the amount of bail in United States criminal cases do not apply in extradition matters. The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts. See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). The fugitive Arias Leiva is not charged with an "offense" within the meaning of 18 U.S.C. § 3156.[1]

---

[1] The term "offense" for the purposes of Section 3141 is defined in 18 U.S.C. § 3156(a)(2) as "any criminal offense, other than an offense triable by court-martial, military commission. provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress. . ."

2

Instead, Arias Leiva is charged with Embezzlement for Third Parties and Conclusion of Contract without Fulfilling Legal Requirements against the Requesting State, Colombia.

Similarly, neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings.[2] Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101 (d)(3); See also Afanesjev v. Hurlburt, 418 F.3d 1159, 1164-65 (11th Cir. 2005); Melia v. United States, 667 F.2d 300, 302 (2d Cir. 1981); Bovio v. United States, 989 F.2d 255, 259 n.3 (7th Cir. 1993).

### A. A Strong Presumption Against Bail Governs In An International Extradition Proceeding

The overwhelming weight of authority supports the strong presumption against the granting of bail in international extradition cases. Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted in only the most unusual of circumstances. And this is not one of those circumstances.

In the landmark case Wright v. Henkel, 190 U.S. 40 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was a director. The United States argued in Wright that extradition courts were without power to allow bail because no statute provided for such power. Id. at 55. The Court stated that it was unwilling to hold that the circuit courts do not possess power with respect to admitting fugitives to bail other than as specifically vested by statute, but cautioned that " . . . bail should not ordinarily be granted in cases of foreign extradition . . . ." Id. at 63.

---

[2] Although the issue before the Court is the fugitive's request for bail, it also should be noted that neither the prohibitions against hearsay, Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980), nor the Sixth Amendment's guarantee to a speedy trial, Jhirad v. Ferrandina, 536 F.2d 478, 485 n. 9 (2d Cir. 1976), apply to international extradition proceedings.

In establishing this presumption against bail, the Supreme Court in Wright explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

Id. at 62.

The reasons for this presumption against bail in international extradition cases are clear and compelling. First, it is necessary for the United States to meet its legal treaty obligations. A person sought for extradition already is an international fugitive from justice; it is reasonable to think that person would flee if alerted to the charges. Even if the person were not in flight, the fact of an impending extradition to a foreign country to face serious criminal charges or to serve a sentence, is itself a strong incentive to flee.

Further, the ability of the United States to deliver fugitives pursuant to extradition requests has significant international law implications. The international legal system depends wholly upon the respect of its members for the obligations into which they freely enter. When, as here, the Government of Colombia meets the conditions of the treaty, the United States is obliged to deliver the fugitive. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. See Wright, 190 U.S. at 62; see also U.S. v. Leitner, 784 F.2d 159, 160-61 (2d Cir. 1986)(the Government has an

overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

### B. The Fugitive Must Establish "Special Circumstances" and Must Not Pose a Risk of Flight for the Court to Consider the Question of Bail

In light of the strong presumption against bail established in Wright, the federal courts have uniformly held that bail shall not be granted except under "special circumstances." See United States v. Leitner, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory"), (quoting In re Mitchell, 171 F. 289 (S.D.N.Y. 1909)(Hand, J.); Salerno v. United States, 878 F.2d 317, 318 (9th Cir. 1989)("only 'special circumstances' will justify bail"); Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir. 1991)("in a case involving foreign extradition, bail should not be granted absent special circumstances"); Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 827 (11th Cir. 1993)(adhering to traditional special circumstances test); see In re Extradition of Hernandez-Andrade, 16-MC-21470-MCALILEY, *1 (S.D. Fla. June 3, 2016).

Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the granting of bail. See Salerno, 878 F.2d at 317-18; Leitner, 784 F.2d at 160.[3]

Notably, the courts have determined that certain circumstances are not "special" and do not justify the release of a fugitive during extradition proceedings. Foremost, the absence of flight risk is consistently held not to constitute a special circumstance. Rather, the absence of a

---

[3] Some courts have applied a clear and convincing evidence standard reasoning that the presumption against bail in extradition cases justifies a heightened standard of proof. United States v. Ramnath, 533 F. Supp. 2d 662, 671 (E.D. Tex. 2008); In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 735 (W.D. La. 1999); In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1214-15 (D. Nev. 1993); In re Extradition of Mainero, 950 F. Supp. 290, 294-95 (S.D. Cal. 1996); but see In re Extradition of Santos, 473 F. Supp. 2d 1030, 1036 n.4 (C.D. Cal. 2006) (rejecting heightened standard adopted in Nacif-Borge and applying preponderance of evidence standard).

5

risk of flight and a finding of special circumstances are each independent requirements for bail in an extradition case. Therefore, to qualify for bail, a fugitive is required to make a two-part showing that: (1) he or she is not a flight risk and (2) that "special circumstances" exist warranting the granting of bail. See In re Extradition of Hernandez-Andrade, No. 16-MC-21470-MCALILEY, *1; see In re Extradition of Shaw, No. 14-MC-81475-WM, *10 (S.D. Fla. Feb. 6, 2015); United States v. Ramnath, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008); In re Extradition of Molnar, 182 F. Supp. 2d 682, 687 (N.D. Ill. 2002); In re Extradition of Nacif-Borge, 829 F.Supp. 1210, 1215 (D. Nev. 1993); In re Extradition of Chapman, 459 F.Supp.2d 1024, 1026-27 (D. Haw. 2006); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1035-36 (C.D. Cal. 2006). The absence of flight risk is consistently held to be a requirement separate from the special circumstances test.

To illustrate, in Leitner, the fugitive was a United States citizen, who had been arrested in Israel and charged with acts of terrorism against Arabs. Israeli authorities freed Leitner on bail after he agreed to cooperate with them. After receiving death threats, Leitner fled to his home in the United States and lived openly under his own name for a year and a half. He attended law school, drove a taxi under his own name, and lived with or frequently visited his parents. Based upon the foregoing, the Magistrate Judge found that Leitner did not pose a flight risk. The Second Circuit, in affirming the district court's reversal of the grant of bail, held that the lack of flight risk was not a "special circumstance." 784 F.2d at 161. See also, Salerno, 878 F.2d at 318 (flight risk "is not a criteria for release in an extradition case"); Matter of Russell, 805 F.2d 1215, 1216 (5th Cir.)("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979)("even applicant's arguable acceptability as a tolerable bail risk" is not a special circumstance). Instead, absence of flight

6

risk is an independent and additional condition that must be demonstrated to warrant bail.[4] Similarly, findings regarding danger to a community both here and abroad would preclude bail, even in the face of arguably special circumstances.  See In re Extradition of Gonzalez, 52 F.Supp.2d 725, 735 (W.D. La. 1999); Ramnath, 533 F. Supp. 2d at 665; Extradition of Molnar, 182 F. Supp. 2d at 687; Extradition of Nacif-Borge, 829 F.Supp. at 1215; Extradition of Santos, 473 F. Supp. 2d at 1035-36.

Assuming the fugitive is not a risk of flight and poses no danger to the community, the fugitive must make an affirmative showing of special circumstances.  Some examples of where courts have declined to find "special circumstances" based on: (1) the need to consult with one's attorney and/or participate in pending litigation;[5] (2) the complexity of the pending litigation;[6] (3) United States citizenship or pendency of immigration proceedings;[7] (4) the availability of electronic monitoring;[8] (5) the fugitive's character, past conduct, and/or ties to the community;[9]

---

[4] Courts differ in the order in which they consider flight risk and special circumstances. Some courts evaluate potential flight risk before proceeding to any special circumstances analysis. E.g., Extradition of Molnar, 182 F. Supp. 2d at 687; United States v. Taitz, 130 F.R.D., 442, 445 (S.D. Cal. 1190). Other courts first determine special circumstances and then consider the potential for flight. E.g., Extradition of Morales, 906 F. Supp. at 1373; Extradition of Nacif-Borge, 829 F. Supp. at 1216; Extradition of Mainero, 950 F. Supp. 290, 295 (S.D. Cal. 1996).  Regardless of the order of consideration, case authority is clear that both special circumstances must be demonstrated **and** lack of flight risk must be established to grant bail.  Practical considerations and judicial economy suggest determinations as to flight risk and danger to the community be made first.

[5] See, e.g., In the Matter of Extradition of Smyth, 976 F.2d 1535 (9th Cir. 1992) ("The need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things"); accord, Matter of Extradition of Russell, 805 F.2d 1215, 1217 (5th Cir. 1986).

[6] See e.g. Matter of Extradition of Russell, 805 F.2d 1215, 1217 (5th Cir. 1986).

[7] See e.g. In re Extradition of Orozco, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003).

[8] See e.g. Matter of Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997).

[9] A fugitive's character, including past conduct, lack of a prior criminal record, and ties to the community should not be considered a special circumstance.  Instead, and as most district courts have recognized, a defendant's character is more appropriately considered when conducting the

7

(6) ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings;[10] and (7) fugitive's claims of likely success against extradition or action in requesting country.[11]

While in certain exceptional cases some of the above may have been deemed a special circumstance, for the most part, where a court determines special circumstances to exist it is generally based on a confluence of factors, as opposed to any single consideration. Such findings are very case specific and within the discretion of the court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

## II. THE FUGITIVE POSES A RISK OF FLIGHT AND CANNOT ESTABLISH SPECIAL CIRCUMSTANCES

The fugitive in this case has not met his burden and the Court should deny his request for bail.

---

independent flight risk analysis. In Matter of Extradition of Nacif-Borge, the court explained that "[m]ore often, the character and background of a person subject to extradition are considered in regard to risk of flight and danger to the community rather than as a special circumstance." 829 F. Supp. 1210, 1220 (D. Nev. 1993). See also Matter of Extradition of Sidali, 868 F. Supp. 656 (D.N.J. 1994) (rejecting "extraordinary character" based on employment, family ties, no prior record, and community respect as a special circumstance); In re Extradition of Valles, 36 F. Supp. 2d 1228, 1231 (S.D. Cal. 1998) (fugitive's past conduct and community ties used to assess flight risk).

[10] Delays during the course of extradition proceedings do not qualify as special circumstances. An extradition proceeding is not a criminal case, and hence a fugitive has no Sixth Amendment right to a speedy trial. See Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 829 (11th Cir. 1993).

[11] In re Extradition of Hernandez-Andrade, No. 16-MC-21470-MCALILEY, *2. The availability of bail for the charged offense in the requesting country is not a special circumstance justifying bail. In fact, the bail practices of the requesting country is entirely irrelevant**.** By statute, 18 U.S.C. 3184, et. seq., and through its mandatory treaty obligations, the United States' is obligated to deliver fugitives to the requesting country. As a result, a court's role is limited to determining the sufficiency of the extradition request and existence of probable cause. Charlton v. Kelly, 229 U.S. 447, 462 (1913); Collins v. Loisel, 259 U.S. 309, 316-317 (1922). Regardless, bail in Colombia is not at issue since the extradition request is for Arias Leiva to serve his seventeen-year sentence.

A fugitive charged with crimes in another country is already by definition in flight or deliberately absent from that jurisdiction. The strong presumption against bail is supported by the seriousness of crimes Arias Leiva stands convicted and the corresponding sentence of 17 years of imprisonment. The fugitive poses a clear risk to abscond because after he was released from custody pending trial in Colombia, but shortly before imposition of judgment and sentence, he fled the country. Additionally, the fugitive has demonstrated that he is highly adept at moving (himself and his family) and accessing financial and other resources in aid of flight. Hence, further flight from the United States to yet another country or to an underground location in the United States is a reasonable assumption. Because the fugitive is a risk of flight, the Court need go no further in order to deny the application for bail. The fugitive has been unable to meet this necessary independent basis to obtain bail and the Court need not even consider any arguments regarding special circumstances.

However, were the Court satisfied that the fugitive is not a flight risk, the fugitive cannot demonstrate to this Court that "special circumstances" exist which would justify bail in this case. The fugitive has a heavy burden to meet in proving the exceptional circumstances that would vitiate the strong presumption against bail. See <u>In re Extradition of Hernandez-Andrade</u>, No. 16-MC-21470-MCALILEY, *1("Determining the existence of special circumstances involves a fact-specific inquiry and special circumstances will be found only where justification for release is clear") (citation omitted). Specifically, the United States expects the fugitive in this case to rely on his family ties and on a pending immigration case as being examples of factors that might constitute special circumstances. Such alleged grounds do not constitute "special circumstances" under the standards developed by courts following <u>Wright</u>. An analysis of the facts in this case

9

in light of these standards demonstrates that the fugitive has not met his burden for the extraordinary relief he requests.

In essence, the fugitive will attempt to convince this Court that he is a good bail risk. The fugitive's position, however, is legally insufficient under U.S. case law to justify granting bail in an international extradition proceeding. Allowance of bail in any amount would not guarantee the fugitive's presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs. While forfeiture of bail in domestic criminal cases is designed to compensate, at least in part, the court that is seeking the accused presence for trial, forfeiture of bail in international extradition cases due to the failure of the fugitive to appear would leave the requesting country, here Colombia, without either remedy or compensation.

Should, however, the Court be inclined to grant bail in this case, counsel for the Government respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances." Moreover, in order to protect the ability of the United States to meet its treaty obligations to the Government of Colombia, counsel requests that the Court notify the parties a reasonable time in advance of any contemplated release order in order that the United States can consider the matter of whether, under the circumstances, to seek a stay pending possible appeal on the bail issue.

### III. CONCLUSION

In sum, fugitive Andres Felipe Arias Leiva is a flight risk. While on release pending trial in Colombia, he absconded shortly before the imposition of judgment and sentence by the Colombian Supreme Court. He therefore cannot prove that he will abide by bail conditions imposed by the Court. He has not demonstrated that "special circumstances" exist which would justify bond in his case. Finally, the fugitive's release on bail would have negative implications

for U.S. foreign policy in cases where the United States seeks extradition of fugitives from Colombia.  Based on the foregoing, the United States requests that the fugitive's request for bail be denied.

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

        */s/ Robert J. Emery*
        Robert J. Emery
        Assistant United States Attorney
        Court ID No. A5501892
        99 Northeast 4th Street
        Miami, Florida 33132-2111
        Tel: (305) 961-9421
        Fax: (305) 536-4651

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on 25th day of August, 2016, with the Clerk of the Court using CM/ECF.  I further certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

        */s/ Robert J. Emery*
        Assistant United States Attorney