UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23468-MC-O'SULLIVAN

IN THE MATTER OF THE EXTRADITION
OF ANDRES FELIPE ARIAS LEIVA

_____/

## ORDER

THIS MATTER is before the Court on the Emergency Motion to Dismiss
Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 35, 10/24/16) filed
by Andres Felipe Arias Leiva (hereinafter "Dr. Leiva").

## BACKGROUND

Dr. Leiva filed the instant motion on October 24, 2016. See Emergency Motion to
Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 35,
10/24/16). The government filed its response in opposition and a notice of
supplemental authority on October 28, 2016. See Government's Response in
Opposition to Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for
Lack of Jurisdiction (DE# 37, 10/28/16); Government's Notice of Supplemental Filing in
Opposition to Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for
Lack of Jurisdiction (DE# 38, 10/28/16). Dr. Leiva filed his reply on October 31, 2016.
See Andres Arias Leiva's Reply to Colombia's Response to His Emergency Motion to
Dismiss Complaint (DE# 39, 10/31/16). On November 4, 2016, the government filed a
second notice of supplemental authority. See Government's Notice of Supplemental
Authority in Support of Government's Response in Opposition to Emergency Motion to
Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 45,

11/4/16). Dr. Leiva responded to the government's supplemental authority on November 5, 2016. See Andres Arias Leiva's Response to the Government's Notice of Supplemental Authority (DE# 46, 11/5/16).

On November 17, 2016, the Court held a hearing on the instant motion. See Transcript (DE# 53, 12/6/16). Following the hearing, the Court permitted the parties to file supplemental briefs.

On December 16, 2016, the government filed its supplemental response. See Government's Supplemental Response in Opposition to Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction, and Request for a Hearing (DE# 54, 12/16/16). Dr. Leiva filed his supplemental response on January 6, 2017. See Response to the Republic of Colombia's Supplemental Memorandum Regarding Jurisdiction (DE# 56, 1/6/17). The government filed its supplemental reply on January 13, 2017. See Government's Supplemental Reply in Further Opposition to Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction, and Request for a Hearing (DE# 57, 1/13/17).

This matter is ripe for adjudication.

## ANALYSIS

"The federal extradition statute generally permits extradition when based on a treaty or convention." Noriega v. Pastrana, 564 F.3d 1290, 1295 (11th Cir. 2009) (citing 18 U.S.C. § 3184). The instant Complaint for Extradition (DE# 1, 8/11/16) alleges that "[t]here is an extradition treaty in force between the United States and the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. Treaty Doc. No. 97-8 (1981) ('Extradition Treaty')" and that "[p]ursuant to its own domestic law and in accordance with Articles 1,

2

2, and 9 of the Extradition Treaty, the Government of Colombia has asked the Government of the United States, through diplomatic channels, for the extradition of [Dr. Leiva]." Complaint for Extradition (DE# 1 at ¶¶2-3, 8/11/16).

Dr. Leiva takes the position that there is no extradition treaty in effect between the United States and Colombia because "[o]n 12 December 1986, the Colombian Supreme Court of Justice held that Colombia's legislation ratifying the Extradition Treaty was not constitutionally enacted." Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 35 at 2, 10/24/16). Therefore, Dr. Leiva argues that "the Extradition Treaty never went into force and is a nullity." Id.[1]

The government[2] opposes the relief requested on the ground that the Treaty remains in effect. In support of its position that the Extradition Treaty remains in effect, the government has filed the Declaration of Assistant Legal Adviser Tom Heinemann of the Department of State. See Supplemental Declaration of Tom Heinemann (DE# 37-1,

---

[1] Dr. Leiva also notes that the Colombian Supreme Court's holding "was reaffirmed on 25 June 1987." Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 35 at 2, 10/24/16).

[2] The parties dispute whether the government of Colombia or the government of the United States has brought the instant extradition proceedings before this Court. Dr. Leiva asserts that "Colombia is the complaining party" and that "[t]he United States is not a party to this action and has no standing." Andres Arias Leiva's Reply to Colombia's Response to His Emergency Motion to Dismiss Complaint (DE# 39 at n.1, 10/31/16). The government maintains that these proceedings were brought by the United States and not Colombia. See Government's Response in Opposition to Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 37 at 1 n.1, 10/28/16) (stating that "[t]he United States does not . . . serve as counsel representing Colombia, nor is Colombia a party to this case in U.S. courts."). The issue of which country is bringing the extradition proceedings is not dispositive to the Court's ruling on the instant motion because, as set forth in this Order, both the United States and Colombia are in agreement with respect to the validity of the Extradition Treaty.

10/28/16). Mr. Heinemann attests that "the United States has never considered that the Colombian [Supreme C]ourt's decisions had the effect of terminating or suspending the operation of the [Extradition] Treaty, either as a matter of International law generally or under the express terms of Article 21."[3] Id. at ¶4. Mr. Heinemann also attests that:

> Colombia has not provided the United States [with] either a notice of termination under Article 21 of the Treaty, or a notice of invalidity or termination under the principles set forth in the Vienna Convention; **In the view of the United States, the obligations of the Treaty remain legally binding upon both Parties**.

Id. at ¶ 8 (emphasis added).

At the November 17, 2016 hearing, the government argued that "as long as the [E]xecutive [B]ranch speaks on the matter, as far as the validity of the treaty, . . . it is either a political question or this Court should give great deference to [the Executive Branch's] finding." Transcript (DE# 53 at 40, 12/6/16). At the conclusion of the November 17, 2016 hearing, the Court gave the parties an opportunity to submit supplemental filings.

In its supplemental filings, the government continues to assert that: (1) "the issue of whether a treaty was properly ratified is a nonjusticiable political question" and (2) if the Court were to address the merits, "the view of the U.S. Department of State is alone sufficient to end the inquiry into whether the [Extradition Treaty] is in force." Government's Supplemental Response in Opposition to Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction, and Request for a Hearing (DE# 54 at 2, 11, 12/16/16). Nonetheless, the government has supplemented

---

[3] Article 21 of the Extradition Treaty governs its ratification, entry into force, and termination.

the record by filing Diplomatic Note S-DM-16-109804, dated December 2, 2016, from the Director of the Office of International Judicial Affairs of the Ministry of Foreign Affairs of Colombia[4] (hereinafter "Diplomatic Note"). See Diplomatic Note (DE# 54-1 at 8-10).

The Diplomatic Note acknowledges the Colombian Supreme Court's rulings with respect to the Extradition Treaty:

> The Law 27 of 1980, approbatory of the "Treaty of Extradition between the Republic of Colombia and the United States of America", signed on September 14, 1979, as well as the Law 68 of 1986, issued for the same purposes, were declared unconstitutional through sentences of the Supreme Court of Justice of December 12, 1986, and June 25, 1987, respectively.

Diplomatic Note (DE# 54-1 at 8). It states that the effect of the Colombian Supreme Court's rulings were "exclusively of internal nature and have the consequence that in the Republic of Colombia the [Extradition T]reaty cannot be applied, but they do not affect, the validity thereof." Id. The Diplomatic Note explains that when the United States presents an extradition request to Colombia, that extradition request "cannot be processed, neither granted or denied, in accordance to the Treaty of 1979" and instead is processed under Colombian criminal procedure law. Id. at 9.

The Diplomatic Note states that Colombia considers the Extradition Treaty to be in effect and that the extradition request of Dr. Leiva was made pursuant to the Extradition Treaty:

> the "Treaty of Extradition between the Republic of Colombia and the United States of America", signed on September 14, 1979, **continues**

---

[4] The parties are in agreement that the Ministry of Foreign Affairs of Colombia is the equivalent of the United States Department of State.

> **currently in force**, in accordance with the international law, and as provided by the Article 21(4) of the same Treaty and of the Article 54 of The Vienna Convention on the Law of Treaties, as neither the Republic of Colombia nor the United States of America have notified themselves [of] their intention of terminating it.
>
> Therefore, **the Republic of Colombia understands that the extradition requests that it submits to the authorities of the United States of America, including the extradition request of Mr. Andres Felipe Arias Leiva, are based upon and processed in accordance to the provisions referred in the Treaty of 1979**, as has occurred with previous requests, which, in fact, have been processed and approved or denied by the judicial authorities of the United States of America, based on this Treaty, as shown, for example, in the cases of Eduardo Perea Chavez [and] Reginaldo Bray Bohorquez.
>
> Considering the above exposed, **the Republic of Colombia reiterates that the extradition request of Mr. Andres Felipe Arias Leiva[ ] was submitted at the request of the Supreme Court of Justice of Colombia with the understanding that the United States of America would process it based on the Treaty of 1979 and that the extradition of Mr. Andres Felipe Arias Leiva would be based on the same Treaty**.

Diplomatic Note (DE# 54-1 at 9) (emphasis added).

The official positions of the government of the United States and the government of Colombia – that the Extradition Treaty remains in effect – have been established through the declaration of Mr. Heinemann and the Diplomatic Note. Nonetheless, Dr. Leiva insists that there is no extradition treaty in effect between the United States and Colombia. See Response to the Republic of Colombia's Supplemental Memorandum Regarding Jurisdiction (DE# 56, 1/6/17).

Dr. Leiva argues that the Extradition Treaty is not in force because, among other things, extradition requests presented by the United States to Colombia are not processed under the Extradition Treaty. See Response to the Republic of Colombia's Supplemental Memorandum Regarding Jurisdiction (DE# 56 at 1, 1/6/17). Dr. Leiva

6

insists that this is evidence that the Extradition Treaty, at best, is one-sided and notes that one-sided treaties do not exist. Id.[5]

As evidence that the Extradition Treaty is not in effect, Dr. Leiva cites to several instances where the Colombian government has denied the United States' requests for extradition. See Response to the Republic of Colombia's Supplemental Memorandum Regarding Jurisdiction (DE# 56 at 4-6, 1/6/17). The Court rejects Dr. Leiva's argument that Colombia's denials of these extradition requests is evidence that the Extradition Treaty is an impermissible, one-country treaty. The fact that the Colombian government has, at times, refused some of the United States' requests for extradition is immaterial.[6] It is not out of the ordinary that a country, for a multitude of reasons, refuses an extradition request. In the United States, even after a certificate of extraditability is issued by a United States Magistrate Judge, the Secretary of State retains broad discretion and may ultimately refuse the extradition request. See Martin v. Warden, Atlanta Pen, 993 F.2d 824, 829 (11th Cir. 1993). Moreover, it is not for this Court to

---

[5] Dr. Leiva also relies on: (1) statements made by the current President of Colombia in an interview with BBC News stating that Colombia "ha[s] an extradition agreement with Venezuela, rather than the United States" and (2) the sworn attestations of the former President of Colombia, Alvaro Uribe Velez, that "Colombia does not recognize the treaty as valid or in effect." See Response to the Republic of Colombia's Supplemental Memorandum Regarding Jurisdiction (DE# 56 at 1, 1/6/17); Declaration of Alvaro Uribe Velez (DE# 39-1, 10/31/16). The Court finds that the statements made by the current President of Colombia in an interview with journalists and the declaration of the former president do not take precedence over the official position of the Executive Branch of Colombia as stated in the Diplomatic Note.

[6] Notwithstanding the limited number of extradition refusals cited by Dr. Leiva, the record evidence before this Court is that "Colombia routinely acts on U.S. extradition requests and, in fact, consistently extradites more fugitives annually to the United States than any other country." Second Supplemental Declaration of Tom Heinemann (DE# 54-1 at 1, 12/16/16).

7

decide whether Colombia has been complying in good faith with its treaty obligations. See Charlton v. Kelly, 229 U.S. 447, 471 (1913).

In Charlton, the government of Italy sought the extradition of an American citizen for the murder of his wife. The petitioner filed a writ of habeas corpus arguing, among other things, that because Italy refused to extradite Italian nationals to the United States, "the treaty ha[d] thereby ceased to be of obligation on the United States." Charlton, 229 U.S. at 469. The Secretary of State in a memorandum took the position that:

> since extradition treaties need not be reciprocal, even in the matter of the surrendering of citizens, it would seem entirely sound to consider ourselves as bound to surrender our citizens to Italy, even though Italy should not, by reason of the provisions of her municipal law, be able to surrender its citizens to us.

Id. at 476. In light of the Secretary of State's position, the Supreme Court affirmed the dismissal of the petition for writ of habeas corpus, stating:

> The Executive Department having thus elected to waive any right to free itself from the obligation to deliver up its own citizens, it is the plain duty of this court to recognize the obligation to surrender the [petitioner] as one imposed by the treaty [as] the supreme law of the land, and as affording authority for the warrant of extradition.

Id. In the instant case, the United States government has never taken the position that Colombia is in breach of its treaty obligations. To the contrary, it is the position of the executive branches of both governments that the Extradition Treaty remains in effect. Accordingly, the Court will not find that the Extradition Treaty is not in effect on the basis that Colombia has purportedly not complied with its obligations under the Extradition Treaty.

Dr. Leiva also relies on statements made by this Court and the Eleventh Circuit

concerning the status of the Extradition Treaty. <u>See</u> Response to the Republic of Colombia's Supplemental Memorandum Regarding Jurisdiction (DE# 56 at 2-3, 1/6/17) (citing, <u>e.g.</u>, <u>United States v. Valencia-Trujillo</u>, 573 F.3d 1171, 1179 n.1 (11th Cir. 2009); <u>United States v. Duarte-Acero</u>, 296 F.3d 1277, 1279 (11th Cir. 2002); <u>Gallo-Chamorro v. United States</u>, 233 F.3d 1298, 1302 n.1 (11th Cir. 2000); <u>United States v. Benitez</u>, 28 F. Supp. 2d 1361, 1363 n.2 (S.D. Fla. 1998)).

The statements in the aforementioned cases concerning the validity of the Extradition Treaty constitute dicta and have no binding effect on this Court. <u>See</u> <u>United States v. Eggersdorf</u>, 126 F.3d 1318, 1322 n. 4 (11th Cir. 1997) ("[L]anguage in . . . [an opinion] not necessary to deciding the case then before [the Court]" is dicta); <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1298 (11th Cir. 2010) ("dicta is not binding on anyone for any purpose"). None of the cases cited by Dr. Leiva concern the extradition of an individual <u>from</u> the United States <u>to</u> Colombia pursuant to the Extradition Treaty. Thus, in the cases cited by Dr. Leiva, the courts did not have the opportunity to address the issue before this Court: whether the Extradition Treaty is in effect to permit the extradition of a Colombian citizen from the United States to Colombia.

Unlike the cases cited by Dr. Leiva, the government has filed <u>In the Matter of the Extradition of Maurcio Pardo-Hasche</u>, No. 01-Misc.Cr.-49-A, Decision & Order (W.D.N.Y. Aug. 30, 2002)[7] which is factually on point because it concerned an individual being extradited to Colombia pursuant to the Extradition Treaty. For this

---

[7] A copy of the <u>Pardo-Hasche</u> decision is attached to the Government's Notice of Supplemental Filing in Opposition to Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 38, 10/28/16).

reason and based on Pardo-Hasche's sound analysis, the Court finds the

Pardo-Hasche decision persuasive.

In Pardo-Hasche, a Colombian national (hereinafter "extraditee") challenged the

validity of the extradition treaty between Colombia and the United States.

Pardo-Hasche, Decision & Order, at 1. The court presumed that the extraditee had

standing to raise that challenge and ruled against the extraditee on the merits. Id. at 5-

6. Despite the Colombian Supreme Court's rulings finding that the treaty had never

been ratified, the court in Pardo-Hasche concluded that the Extradition Treaty was in

effect. Id. at 9. Importantly, the court noted that both the executive branch of the United

States and the executive branch of Colombia (through a Memorandum from the

Embassy of Colombia) had taken the position that the extradition treaty was valid. In

light of the consensus by both countries, the Court ruled that the treaty was in full effect.

The fact that Colombia also extradited individuals through means other than the

Extradition Treaty did not alter the court's ruling that the treaty was still in effect

because:

> "[a]s noted in [United States v.] Mitchell, [No. 83-CR-86, 1990 WL 132573
> (E.D.Wis. 1990)] it is not for the United States judiciary to assess the
> validity of such actions taken by the government of Colombia in this
> context. The existence of an internal political power struggle which may
> interfere with the ability of Colombia to effectuate certain terms of the
> Extradition Treaty relating to the extradition of persons *from* Colombia
> does not, without more, invalidate the treaty.

Id. at 8 (emphasis in original). Similarly here, the executive branches of the United

States and Colombia have stated that it is the understanding of both sovereigns that the

Extradition Treaty is currently in effect. Thus, the Extradition Treaty remains in full force

and effect.

Finally, Dr. Leiva relies on the Vienna Convention on the Law of Treaties ("Vienna Convention")[8] to support his argument that the Extradition Treaty is not in effect. See Response to the Republic of Colombia's Supplemental Memorandum Regarding Jurisdiction (DE# 56 at 7-11, 1/6/17). The Court finds that the Vienna Convention[9] would not support a finding that the Extradition Treaty remains in effect because neither party has given notice of its intent to terminate the Extradition Treaty.

In sum, the record evidence establishes that it is the official position of the executive branches of the United States and Colombia that the Extradition Treaty remains in full force and effect. Accordingly, this Court has jurisdiction over the instant extradition proceedings. For this reason, it is

ORDERED AND ADJUDGED that the Emergency Motion to Dismiss Complaint

---

[8] "Although the United States is not a party to the Vienna Convention, it regards the substantive provisions of the Vienna Convention as codifying the international law of treaties." Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1296 (11th Cir. 1999) (citation and quotation marks omitted).

[9] Article 54 of the Vienna Convention states that:

The termination of a treaty or the withdrawal of a party may take place:

(a) in conformity with the provisions of the treaty; or

(b) at any time by consent of all the parties after consultation with the other contracting States.

Vienna Convention on the Law of Treaties, art. 54. Under Article 21 of the Extradition Treaty, "[e]ither Contracting Party may terminate, this Treaty at any time by giving notice to the other Party . . . ." Notice of termination has not been provided by the United States or Colombia. See Diplomatic Note (stating that "neither the Republic of Colombia nor the United States of America have [provided notice of] their intention of terminating [the Extradition Treaty].").

and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 35, 10/24/16) is **DENIED**.

DONE AND ORDERED, in Chambers, at Miami, Florida this ___6___ day of

February, 2017.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record