UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23468-MC-O'SULLIVAN

IN RE EXTRADITION OF

ANDRES FELIPE ARIAS LEIVA

_____/

**ANDRES ARIAS LEIVA'S RESPONSE TO
COLOMBIA'S MOTION TO QUASH SUBPOENAS**

Andres Arias Leiva responds to the Republic of Colombia's Motion to Quash Subpoenas issued to witnesses having personal knowledge material to the probable-cause determination that Colombia's complaint asks this Court to make and states:

**I.      The parties agree that Dr. Arias has the right to call witnesses who can explain the evidence Colombia has submitted in support of its complaint.**

Dr. Arias' right to subpoena witnesses who can provide explanatory evidence is well established, dating back to *Charlton v. Kelly*, 229 U.S. 447, 461 (1913), and Colombia admits that Dr. Arias has the right to call explanatory witnesses. This right is also reflected in 18 U.S.C. § 3191, which specifically provides for an indigent extradition relator to be able to subpoena witnesses free of charge. Colombia specifically concedes that Dr. Arias "'may offer what has been called "explanatory testimony"'" at an extradition hearing. DE99:6 (quoting *Peryea v. United States*, 782 F.Supp. 937, 939 (D. Vt. 1991)). Thus, the parties agree that Dr. Arias has a right to call witnesses whose testimony will be explanatory. Colombia's motion to quash makes no effort to argue that the testimony of the subpoenaed witnesses will be anything but explanatory.

The witnesses whom Dr. Arias subpoenaed will provide testimony that explains, and does not contradict, other evidence in the record. An explanatory witness is one who provides context or additional information that more completely illuminates the issues the Extradition Court must resolve. The law distinguishes explanatory witnesses from those who would contradict or impeach the evidence presented in support of the extradition complaint. As the Ninth Circuit recently explained:

> The Supreme Court has drawn a distinction between evidence "properly admitted in behalf of the [accused] and that improperly admitted." Evidence

that may be admitted is evidence that "explains matters referred to by the witnesses for the government," while "evidence in defense" that merely "contradicts the testimony for the prosecution" may be excluded.

*Santos v. Thomas*, 830 F.3d 987, 992 (CA9 2016) (*en banc*) (quoting *Collins v. Loisel*, 259 U.S. 309, 316–17 (1922), and *Charlton*, 229 U.S. at 461) (citations and brackets omitted).

### A.  *Drew Blakeney, Federico Salcedo, and Silvana del Valle Rodriguez*

Dr. Arias' subpoenas are proper because each witness sought to be examined will explain and develop the context surrounding the undisputed facts. Three of the witnesses — Drew Blakeney, Federico Salcedo, and Silvana del Valle Rodriguez — were personally involved in helping Dr. Arias flee Colombia to seek asylum in the United States. These witnesses will testify that they, acting on behalf of the U.S. Department of State, provided Dr. Arias, his wife, and his children visas to travel lawfully to the United States. The actions that these State Department officials took to aid Dr. Arias' flight are inconsistent with Colombia's assertion that Dr. Arias committed crimes. "It is inconceivable that U.S. Embassy personnel would help Dr. Arias reach the United States unless they were satisfied that his prosecution was politically motivated and fundamentally unfair." DE85:15.

The testimony of these officials is directly material to whether there is probable cause to believe that Dr. Arias committed the crimes of which he was convicted because the verdict of a biased and politicized court has no tendency to prove that a crime was committed. The witnesses' testimony is especially crucial given that the *only* evidence Colombia has submitted in support of its claim that the Fourth Amendment's probable-cause standard is met is the written decision of the Colombian Supreme Court of Justice. The proffered testimony will put that decision in its proper context and help the Court determine what weight, if any, to give it in determining whether there is probable cause to believe Dr. Arias committed the offenses of which he convicted

To get around the materiality of the proffered testimony, Colombia maintains that the judgment of *even a politicized court* is conclusive as to the probable-cause determination. *See* DE94:20. Thus, Colombia takes it for granted that this Court's function is merely to rubber-stamp the Colombian Supreme Court's opinion. That is why it contends that the testimony

2

of the U.S. Embassy personnel has "no relevance whatsoever" to this case. DE99:9. Colombia is wrong. The U.S. Constitution requires this Court to do much more than rubber-stamp a foreign court's decision when there are serious questions about the neutrality of that foreign court.

This Extradition Court's obligation to determine whether Dr. Arias can be constitutionally seized and removed from this country derives from the Fourth Amendment. *See In re Metzger,* 46 U.S. (5 How.) 176, 188–89 (1847); *In re Metzger,* 17 F.Cas. 232, 233 (S.D.N.Y. 1847); 18 U.S.C. § 3184. It is a bedrock constitutional principle that a probable-cause finding can not be based on conclusory evidence but, rather, must be based on the quality of the evidence presented to the judge: "The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." *Giordenello v. United States*, 357 U.S. 480, 486 (1958); *accord Nathanson v. United States*, 290 U.S. 41 (1933) ("Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation."); *cf. Aguilar v. Texas*, 378 U.S. 108, 111 (1964) ("Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police."); *see also Santos*, 830 F.3d at 1047 (Callahan, J., dissenting) ("Of course the deference that the requesting country enjoys does not mean that an extradition judge must accept unsubstantiated or otherwise insufficient allegations of criminality."); *Eain v. Wilkes*, 641 F.2d 504, 510 n.6 (CA7 1981) (holding that the same Fourth Amendment standards applicable to domestic search and arrest warrants are applicable to an international extradition certification).

It follows from this black-letter Fourth Amendment law that the Extradition Court must determine whether the conviction lodged by the Colombian Supreme Court of Justice is reliable enough to support the constitutionally required finding. The Court is

constitutionally barred from deferring to anyone on the weight to give the evidence offered to show probable cause.

Colombia cites only three cases in support of its claim that a foreign conviction *ipso facto* establishes probable cause *no matter what*, *see* DE8213–14, and none is on point. The first, *Martin v. Warden*, 993 F.2d 824 (CA11 1993), did not involve a foreign conviction (the relator had merely been *charged* in Canada) and did not discuss the probable-cause determination at all. It is inapposite.

The second, *Spatola v. United States*, 925 F.2d 615 (CA2 1991), did not involve any claim that the Italian court that convicted the relator was politicized. Rather, the relator wanted the federal courts to review the admittedly neutral Italian court's findings, as though an extradition court were an appellate court. The Second Circuit rejected that on principles of comity. *Id.* at 618 ("To hold that such convictions do not constitute probable cause in the United States would require United States judicial officers to review trial records and, consequently, substitute their judgment for that of foreign judges and juries. Such an inquiry would be inconsistent with principles of comity.").

There is nothing in *Spatola* to support extending its reasoning to this case, which presents a different issue and one of first impression — what weight the decision of a *politicized, biased court* carries in the probable-cause determination. Principles of comity do not apply when the foreign court was not neutral and detached because comity is a matter of grace, while the Fourth Amendment makes determining whether probable cause exists obligatory. *See* THE WOLTERS KLUWER BOUVIER LAW DICTIONARY, Vol. I at 484 (2012) (defining comity as: "An act of accommodation or courtesy. Comity generally refers to any gesture of good will among equals. In particular it refers to an act by one state or sovereign made for the convenience of another, *though not under a legal obligation to do so*, even though a reciprocal benefit might be implied by the doing.") (emphasis added). Because the Colombian court was not neutral and detached, principles of comity do not require this Court to abdicate its Fourth Amendment duties and accept the decision at face value. The Constitution's requirements that arrests be supported by probable cause and that due

process of law be afforded must be enforced, while comity is afforded only when the circumstances permit.

The relator in the third case, *Sidali v. INS*, did not contest that a conviction ordinarily suffices to establish probable cause. 107 F.3d 191 (CA3 1997) ("The United States contends, and Sidali does not dispute, that a foreign conviction obtained after a trial at which the accused is present is sufficient to support a finding of probable cause for the purposes of extradition."). Therefore, because there was no issue in that case about the neutrality of the foreign court, the Third Circuit made no holding on the point.

The additional cases cited in Colombia's reply memorandum, *see* DE94:20–21, are similarly off-topic. Dr. Arias is not asking this Court to examine the "motivation behind a request for extradition," the "political motivation of the prosecution," or to violate the rule of non-inquiry. Dr. Arias seeks only to present evidence on the weight to be given to the evidence Colombia submitted in support a probable-cause finding. Neither the motives for Colombia's decision to prosecute or extradite Dr. Arias have much to do with that. The rule of non-inquiry is inapplicable because it focuses not on the evidence presented in support of the extradition request but on "the procedures or treatment which *await a surrendered fugitive in the requesting country*." *United States v. Kin-Hong*, 110 F.3d 103, 110 (CA1 1997) (emphasis added) (quoting *Arnbjornsdottir–Mendler v. United States*, 721 F.2d 679, 683 (CA9 1983)).

Specifically, Dr. Arias seeks to show that the evidence submitted to support a probable-cause finding is not all that it appears to be. The Colombian court decision is not the product of a fair and unbiased foreign court, but a politicized one, and it is therefore not entitled to very much, if any, weight. This is not speculation.

There is substantial evidence in the record that the U.S. Embassy personnel were correct in their belief that Dr. Arias' conviction was not the product of a fair and unbiased court. First, it is known that the Deputy Chief of Mission at the U.S. Embassy in Bogota cabled the State Department to report: "Arrayed against Uribe's formidable popular support are the weak but not irrelevant political opposition, the media and intelligentsia, and the

politicized Supreme Court." DE85:39 (quoting official cable). Second, the United States Drug Enforcement Agency uncovered evidence that the former Colombian Supreme Court President, Leonidas Bustos, sought bribes in exchange for favorable court rulings. DE95:1. Bustos was the President of the Supreme Court during Dr. Arias' trial, presided over the entire case, and voted to convict Dr. Arias. The DEA investigation revealed that Bustos belonged to a corrupt network in the Supreme Court of Justice that demanded bribes from US$350,000 to US$1 million to rig judicial proceedings. After receiving DEA recordings of Bustos discussing the bribes, Colombian authorities launched a criminal investigation into an "unprecedented corruption case" involving Bustos and at least two other former Supreme Court justices — and the State Department canceled Bustos' visa. Dr. Arias sought a continuance to investigate this, DE95, but it was denied, DE98, because of Colombia's opposition, DE97. Particularly in light of the denial of a continuance to develop those facts, the testimony of the U.S. Embassy personnel is necessary to illuminate the probable-cause issue.

Dr. Arias' position is supported legally by an overwhelming amount of authority holding that Fourth Amendment requires the Extradition Court to "judge for himself," what weight to give the evidence. *Giordenello*, 357 U.S. at 486. Colombia, on the other hand, demands without any authority on point that this Court abdicate its duty and defer to a corrupt foreign court. If, as Colombia contends, this Court "would be the first" to afford a biased, unfair conviction any weight, that is only because the issue has not arisen before.

### B. *Tom Heineman*

The fourth witness, Tom Heineman, is an attorney with the State Department in Washington, D.C. Mr. Heineman has submitted three declarations to this Court in support of Colombia's contention that the United States (but not Colombia) is bound by the Extradition Treaty. *See* Heineman Declaration of 20 April 2016; DE37-1 (26 Oct 2016); DE54-1 (16 Dec 2016). Each of these discusses the issue of whether Colombia ever duly and lawfully ratified the Extradition Treaty between Colombia and the United States. The parties agree

that, if Colombia did not ratify the Treaty, this Court lacks jurisdiction over Colombia's complaint.

Mr. Heineman's declarations are internally contradictory, and his testimony is necessary to clarify what exactly those declarations mean and what weight this Court should accord them. In the October declaration, submitted in response to Dr. Arias' motion to dismiss, he stated both that "Colombia ratified the Treaty," DE37-1:2 ¶ 3, and that the Colombian Supreme Court of Justice, on two separate occasions, "ruled invalid the relevant Colombian legislation *approving* and giving domestic effect to *the Treaty*," DE37-1:2 ¶ 6 (emphasis added). Mr. Heineman has never explained why, given that Colombia's highest court maintains that ratification never lawfully took place, he nonetheless believes it did.

Mr. Heineman's testimony is also necessary to explain the contradictions between his declarations and the unsigned diplomatic note submitted to the Court to support Colombia's invocation of federal jurisdiction. In his December declaration, Mr. Heineman wrote that the diplomatic note reflects the same position he took in his October declaration, *i.e.*, that the Treaty is in effect under "international law." DE54-1:1 ¶ 3. The diplomatic note, however, does not support that. It does not say that the Treaty is in full force and effect. Rather, the note artfully says only that Colombia submitted its extradition request "*with the understanding that* the United States of America would process it based on the Treaty of 1979 and that the extradition of Mr. Andres Felipe Arias Leiva would be based on the same Treaty." DE54-1:9 (emphasis added). The note concludes that "the Republic of Colombia *is confident that* the extradition request of Mr. Arias Leiva ... would be granted ... in accordance with the Treaty ... ." DE54-1:9 (emphasis added).

Colombia has *never* said that it ratified the Treaty or that it is in any way bound by the Treaty — much less that the Treaty is "in full force and effect." In fact, Colombia's attorney told this Court that Colombia does not view the Treaty as being in effect. *See* DE53:25 ("THE COURT: You are in agreement that it is Colombia's view that the Treaty is not in effect? AUSA EMERY: Correct, Your Honor.").

7

This Court can not lawfully exercise jurisdiction without clearing up these contradictions because doubtful jurisdiction may not be exercised. *See Community State Bank v. Strong*, 485 F.3d 597, 628 (CA11 2007) (Judges Marcus and Jordan, concurring specially) (stating that federal courts must refrain from exercising dubious jurisdiction). The only way for the Court to understand what weight, if any, to give Mr. Heineman's legal conclusions, which are contradictory and which conflict with the diplomatic note and the record, is to hear from Mr. Heineman. Specifically, Mr. Heineman needs to explain what precept or principle of international law provides that a treaty that one party unequivocally denies ratifying and denies being bound by can nonetheless be "in full force and effect." Heineman April Declaration at 1 ¶¶ 2 & 3.

The fact, on which Colombia's motion to quash relies, that Mr. Heineman lives and works outside of the district provides no justification for abridging Dr. Arias' right to call him as an explanatory witness. *See* DE99:3 ("Mr. Heinemann currently works in Washington, D.C., and resides in Virginia."). It was the Republic of Colombia, not Dr. Arias, that submitted Mr. Heinemann's declarations and argued that this Court was obligated to give those declarations conclusive effect. *See* DE37:2–3 (arguing that this Court "must defer" to Mr. Heineman's conclusions regarding the existence of the Court's own jurisdiction). Colombia can not choose an out-of-town expert witness, take the position that the Court can not second-guess any of the expert's legal conclusions, and then claim that, because the expert lives in another state, it is unreasonable for Dr. Arias to summon him. In this regard, it should be noted that some of Colombia's lawyers in this matter also work in Washington, D.C., *see* DE101, DE102, yet have traveled without any incident to Miami to participate in this case. Travel between these two cities is not overly burdensome.

**II.     Colombia's arguments are inapposite because Dr. Arias does not seek to obtain "discovery" or to call witnesses for any improper purpose.**

Because Dr. Arias is entitled to call explanatory witnesses, Colombia resorts to labeling the effort to adduce clarifying, explanatory testimony as "discovery." *See* DE99:6. Summoning a witness to testify at the final extradition hearing is not in any sense "discovery," even if that witness is directed to bring documents that would aid his testimony.

8

Discovery is "the process through which attorneys acquire evidence in a case *prior to trial*." THE WOLTERS KLUWER BOUVIER LAW DICTIONARY, Vol. I at 839 (2012) (emphasis added); *accord* BLACK'S LAW DICTIONARY 533 (9th ed. 2009) ("The pretrial phase of a lawsuit during which depositions, interrogatories, and other forms of discovery are conducted."). These witnesses are being called to the final hearing in this case, not for, say, a deposition in anticipation of the final hearing. Colombia's discussion about discovery, DE99:6–11, is thus inapposite.

None of the cases Colombia cites has anything to do with subpoenaing witnesses with direct personal knowledge of the issues before the Extradition Court for the final extradition hearing. Rather, each one deals with broad requests for information in anticipation of the hearing. *See Mazur*, 2007 WL 839982 at *7 (denying request for all documents exchanged between the United States to Poland pertaining to the relator and his extradition, all notes of interviews of the relator taken by federal agents, all documents relating to the relator's entry and departure from the United States, and any exculpatory evidence); *In re Extradition of Mainero*, 990 F.Supp. 1208, 1220 n.26 (SD Cal. 1997) (denying relator's request for "the tape of the interview with Miranda, all notes and interview sheets, and documentation concerning Assistant United States Attorney Curiel's agency on behalf of Mexico"); *In re Extradition of Singh*, 123 F.R.D. 108, 116–23 (D. NJ 1987) (noting that India agreed to provide some discovery but denying request to take depositions, for information about photographic line-ups, and for statements of eye-witnesses); *In re Extradition of Koskotas*, 127 F.R.D. 13, 27 (D. Mass. 1989) (denying request "to inspect and/or photograph 38 categories of items"). Dr. Arias' requests are specifically targeted at material issues that are not sufficiently developed in the record. That is why Colombia has made no attempt to argue that the testimony sought is not explanatory.

In any event, as Colombia concedes, DE99:7, and as its own cited authorities state, "the extradition court has the inherent power to order such discovery procedures as law and justice require." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (CA9 1988); *see also In re*

*Extradition of Mazur*, No. 06-M-295, 2007 WL 839982 at *6 (ND Ill. March 15, 2007) (same). Therefore, just labeling something "discovery" resolves nothing.

Dr. Arias' subpoenas are proper. Indeed, in the *Mazur* case, the U.S. Attorney's Office, acting on behalf of Poland, did not even argue that subpoenas could not issue. Rather, the U.S. Attorney's Office "argue[d] that any subpoena request should be supported by an offer of proof as to what each subpoena is expected to produce, and, just as importantly, how it is relevant to the issues to be decided at an extradition hearing." 2007 WL 839982 at *8. The Court found that "testimony about how the State Department arrived at the conclusion that the extradition should be pursued" was not "relevant to the limited issues before it." *Id.* As Colombia concedes, DE99:9, the Extradition Court allowed the relator to subpoena a police official, together with documents, because that testimony, together with the documents, "may indeed explain the evidence against Mr. Mazur that was offered in the extradition complaint." *Id.* at *9.

Thus, *Mazur* makes clear that Dr. Arias has the right to subpoena explanatory witnesses and documents. That decision turned on the fact that the relator did not explain how internal State Department decisions had anything to do with whether the relator probably committed the charged offenses. In this case, however, the State Department's actions in abetting Dr. Arias' flights means either that the U.S. government helped a criminal escape justice — a wildly implausible supposition — *or* that the the State Department personnel closest to the facts knew that Dr. Arias was innocent. Thus, their testimony is directly relevant to the matter of probable cause. Similarly, Mr. Heineman's testimony is directly pertinent to resolving conflicts in the record regarding this Court's jurisdiction.

The other authorities Colombia cites in support of its motion also afford no grounds for quashing the subpoenas. *Martin v. Warden*, 993 F.2d 824 (CA11 2005), held that the Sixth Amendment's Speedy Trial Clause does not apply in an extradition case. The only sentence in it that possibly has anything to do with a relator's right to call witnesses supports Dr. Arias, not Colombia: "The constitutional rights of individuals, including the right to due process, are superior to the government's treaty obligations." *Id.* at 829. Similarly, *Bingham*

10

*v. Bradley* held only that the relator had no right to insist that witnesses to the foreign crime, who had provided affidavits, be made to appear in the United States for cross-examination. 241 U.S. 511, 517 (1916). Thus, the Second Circuit's *dictum* in *Simmons v. Braun* that "[t]here is no inherent right to the confrontation and cross-examination of witnesses," 627 F.2d 635, 636 (CA2 1980), included the qualifier *inherent* because there is a well-established right to examine witnesses for the purposes of clarifying their evidence.

### III.     The subpoenas are not defective in form.

Colombia objects that Dr. Arias used the subpoena form for criminal cases, contending that this is not a criminal proceeding. *See* DE99:4. Colombia admits that Dr. Arias has the right to call explanatory witnesses. Yet, it objects to the use of a criminal subpoena without suggesting that a civil subpoena or some other type would be preferable. Thus, its argument seems to be that the right to call explanatory witnesses can not be enforced because the U.S. government has not produced an official form for subpoenaing such witnesses. This position is nothing but formalism.

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure govern extradition proceedings because extradition proceedings arise under the Fourth Amendment. *See* DE56:14. The federal judiciary became involved in extradition proceedings because only the judicial branch can authorize a seizure that satisfies the Fourth Amendment. *See In re Metzger*, 46 U.S. (5 How.) 176, 188–89 (1847); *In re Metzger*, 17 F.Cas. 232, 233 (S.D.N.Y. 1847); 18 U.S.C. § 3184. An extradition relator receives, under the Due Process Clause, more procedural protections than a domestic target because the consequences of an erroneous probable-cause finding are far more grave. A person mistakenly sent to a foreign country can not be released if the information provided to the extradition court is later found to have been materially incomplete or deceptive.

There are, however, instances in which the Due Process Clause similarly operates to reinforce the Fourth Amendment's protections by allowing a domestic defendant to contest the issuance of a warrant. For example, a defendant who demonstrates that a magistrate judge's probable-cause finding was likely the product of deliberate or reckless falsehoods is

entitled to an evidentiary hearing on those allegations. *See Franks v. Delaware*, 438 U.S. 154 (1978). No one would seriously argue that a *Franks* hearing is not criminal in nature and that, therefore, a criminal subpoena, Form AO-89, can not be used to summon witnesses to such a hearing.

The same logic applies here. Dr. Arias has an undisputed right to call explanatory witnesses — *i.e.*, witnesses who can put the evidence in its proper context and light. This proceeding is criminal in nature because it arises under the Fourth Amendment and requires a probable-cause finding. *See generally Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("The substance of all the definitions of probable cause is a reasonable ground for belief of guilt.") (internal quotation marks and citation omitted). Therefore, the subpoenas used are proper.

## Conclusion

As its quotation from *Peryea v. United States* shows, DE99:6, Colombia was well aware when it filed its motion to quash that Dr. Arias has the right to offer explanatory testimony. Yet, Colombia has made no effort to argue that the testimony sought is anything but explanatory. Indeed, all the witnesses who have been subpoenaed will necessarily offer only explanatory testimony. Their testimony is not offered to contradict any of Colombia's evidence. Rather, it is offered to put that evidence in its correct context.

The testimony of the U.S. Embassy personnel at Bogota will show that these State Department officials knew that Dr. Arias trial was not fair or neutral. New evidence has surfaced showing that the chief magistrate of the Colombian Supreme Court of Justice who presided over Dr. Arias' trial was taking bribes. Because it was not the product of an independent judiciary, Dr. Arias' conviction is not reliable evidence and can not support a finding of probable cause to believe Dr. Arias committed any crime.

The testimony of Mr. Heinemann is necessary to clarify conflicts in the record regarding this Court's jurisdiction. The record contains conflicting statements as to whether Colombia ever ratified the Extradition Treaty. These conflicts must be resolved.

## CERTIFICATE OF SERVICE

This notice was filed electronically on 22 September 2017 through CM/ECF and served on AUSA Robert Emery through that system.

Respectfully submitted,

David Oscar Markus
Florida Bar No. 119318
Lauren Doyle
Florida Bar No. 117687
Markus/Moss PLLC
40 N.W. Third Street Penthouse One
Miami, Florida 33128
305-379-6667

Ricardo J. Bascuas
Florida Bar No. 093157
1311 Miller Drive
Coral Gables, Florida 33146
305-284-2672

/s/ *Marc David Seitles*
Marc David Seitles
Florida Bar No. 0178284
Seitles & Litwin PA
40 N.W. Third Street, Penthouse One
Miami, Florida 33128
305-403-8070