UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23468-CV-O'SULLIVAN

IN THE MATTER OF THE EXTRADITION
OF ANDRES FELIPE ARIAS LEIVA

_____/

## EXTRADITION CERTIFICATION AND ORDER OF COMMITMENT

These extradition proceedings were commenced by the United States[1] pursuant to 18 U.S.C. § 3184 and the extradition treaty between the United States and the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. Treaty Doc. No. 97-8 (1981) (hereinafter "Treaty").

On August 11, 2016, this Court issued a complaint for the provisional arrest of Andres Felipe Arias Leiva (hereinafter "Dr. Arias Leiva") with a view towards extradition at the request of the United States, acting on behalf of the government of Colombia.

---

[1] The government maintains that these proceedings were brought by the United States and not Colombia. Dr. Arias Leiva insists that the instant proceedings were brought by the government of Colombia and not the government of the United States. Dr. Arias Leiva notes that the complaint asserts that the Assistant United States Attorney is "act[ing] for and on behalf of the Government of Colombia." Answer to Colombia's Complaint and Memorandum of Law in Opposition to Extradition (DE# 85 at 4 n. 7.) (quoting Complaint (DE# 1 at ¶1)). The Court finds that the instant proceedings were brought by the government of the United States on behalf of the government of Colombia. On November 17, 2016, the Court held a hearing on Dr. Arias Leiva's Emergency Motion to Dismiss Complaint and Vacate Arrest Warrant for Lack of Jurisdiction (DE# 35, 10/24/16). At that hearing, the Assistant United States Attorney who swore to the complaint represented to the Court that "[t]he United States is representing the interests of the Republic of Colombia pursuant to the valid treaty. . . ." Transcript (DE# 53 at 16-17). Following the hearing, the Court issued an Order setting forth its reasons why the "Treaty remains in full force and effect." Order (DE# 59 at 11). Accordingly, the Court finds that the United States of America is acting on behalf of the government of Colombia, pursuant to Colombia's request for the extradition of Dr. Arias Leiva pursuant to its obligations under the Treaty.

See Complaint for Extradition (DE# 1, 8/11/16). The complaint indicates that "on July 26, 2011, the Attorney General of Colombia charged [Dr. Arias Leiva] with the offenses of Embezzlement for Third Parties, in violation of Article 397 of the Colombian Criminal Code[ ] and Conclusion of Contract without Fulfilling Legal Requirements, in violation of Article 410 of the same code." Id. at ¶4. Dr. Arias Leiva's trial began on June 14, 2011 and continued through February 25, 2014. Id. On June 13, 2014, Dr. Arias Leiva fled to the United States. Id. "On July 16, 2014, the Criminal Cassation Division of the Supreme Court of Justice, in Bogota, Colombia (hereinafter "Supreme Court of Colombia"), issued a judgment convicting [Dr. Arias Leiva] of both offenses, and sentencing him to 209 months and 8 days of imprisonment. On July 18, 2014, the Supreme Court of Colombia issued a warrant for [Dr. Arias Leiva's] arrest." Id.

On August 24, 2016, Dr. Arias Leiva was arrested in Weston, Florida pursuant to an arrest warrant issued by this Court in conjunction with the issuance of the extradition complaint. See Arrest Warrant Return (DE# 20, 9/9/16). Dr. Arias Leiva is presently on bond[2] pending the resolution of these extradition proceedings. See Paperless Minute Entry (DE# 48, 11/17/16).

On March 29, 2017, the government filed its Memorandum of Law in Support of Extradition (DE# 82, 3/29/17) (hereinafter "Memorandum"). Dr. Arias Leiva filed his Answer to Colombia's Complaint and Memorandum of Law in Opposition to Extradition

---

[2] Initially, the Court denied Dr. Arias Leiva's request for a bond finding that Dr. Arias Leiva had not rebutted the presumption that he was a risk of flight given that he "fled [Colombia] on June 13, 2014, after his criminal trial had concluded but before the Colombia Supreme Court issued its judgment of conviction." Order (DE# 16 at 2, 8/30/16).

(DE# 85, 6/23/17) (hereinafter "Response") on June 23, 2017. The government filed its reply on July 21, 2017. See Government's Reply Memorandum in Support of Extradition (DE# 94, 7/21/17) (hereinafter "Reply"). Additionally, Dr. Arias Leiva filed two notices of supplemental authority. See Notice of Filing Supplemental Authority (DE# 88, 7/5/17); Notice of Filing Supplemental Authority Re: Colombia's Denial of U.S. Request to Extradite Franklin Mosquera Quejada to the Middle District of Florida (DE# 89, 7/11/17).

**FINDINGS**

On September 28, 2017, this Court conducted an extradition hearing pursuant to 18 U.S.C. § 3184. International extradition proceedings are governed by 18 U.S.C. § 3181 et seq. and by treaty. In applying an extradition treaty, the Court is to construe it liberally in favor of the requesting nation. See Factor v. Laubenheimer, 290 U.S. 276, 293-94 (1933).[3] In considering the evidence presented by the government of Colombia, as contained in the extradition documents submitted in support of the extradition request, the evidence offered by Dr. Arias Leiva, the Extradition Treaty between the United States and Colombia and the applicable law, the Court finds that the terms of

---

[3] Dr. Arias Leiva argues that "any doubts as to whether extradition would be lawful [should be] resolved against certification" because the purpose of any extradition treaty is to "maintain mutual and reciprocal obligations between the signatories" and "Colombia frustrates that purpose consistently by denying and limiting U.S. extradition requests in its own discretion." Response (DE# 85 at 57-58). The Court has already determined that "[t]he fact that the Colombian government has, at times, refused some of the United States' requests for extradition is immaterial" because "[i]t is not out of the ordinary that a country, for a multitude of reasons, refuses an extradition request" and that "it is not for this Court to decide whether Colombia has been complying in good faith with its treaty obligations." Order (DE# 59 at 7-8). Accordingly, the Court will not depart from the well-established tenet that extradition treaties are to be liberally construed. Factor, 290 U.S. at 293-94.

the Treaty and 18 U.S.C. § 3184 have been satisfied with respect to Dr. Arias Leiva's extradition to Colombia.

In an extradition matter, the Court does not determine the guilt or innocence of the extraditee, but rather determines whether the following elements have been satisfied in order to support extradition: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the extraditee; (3) the applicable treaty is in full force and effect; (4) the crime(s) for which surrender is requested is/are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. See Fernandez v. Phillips, 268 U.S. 311, 312 (1925); Hoxha v. Levi, 465 F.3d 554, 560 (3d Cir. 2006).

## I. Authority of the Court Over the Proceedings

This Court finds that it has subject-matter jurisdiction over these proceedings. See 18 U.S.C. § 3184. Section 3184 provides that:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or **any magistrate judge** authorized so to do by a court of the United States . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or **magistrate judge**, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the

> surrender of such person, according to the stipulations of the treaty or convention . . . .

Id. (emphasis added). Magistrate judges of this Court are authorized by local rule to "[c]onduct extradition proceedings, in accordance with Title 18, United States Code, Section 3184." S.D. Fla. Local Magistrate Rule 1(a)(3).

Dr. Arias Leiva argues that the Court does not have subject-matter jurisdiction over the instant proceedings because: (1) the complaint was not made under oath and "[n]o Colombian official has sworn to the assertions in it, including the claim that the Extradition Treaty is in full force and effect;" (2) Colombia continues to deny extradition requests by the United States prompting a letter of protest by a United States Ambassador; (3) "no one has stated that the Treaty is 'in full force and effect' in or for Colombia;" (4) the complaint does not rely on the treaty and (5) the United States has no Article III standing. Response (DE# 85 at 22).

The Court is not persuaded by Dr. Arias Leiva's argument that there are purported defects in the complaint warranting the dismissal of the instant proceedings. The complaint invokes the Treaty and was sworn to by the Assistant United States Attorney upon information and belief. See Complaint (DE# 1 at ¶3) (stating that "[p]ursuant to its own domestic law and in accordance with Articles 1, 2, and 9 of the Extradition Treaty, the Government of Colombia has asked the Government of the United States, through diplomatic channels, for the extradition of ANDRES FELIPE ARIAS LEIVA ('ARIAS LEIVA')"); see also In re Extradition of Bruce Ainsley Beresford-Redman, No. CR 10-2780M, 2010 WL 5313494, at *7 (C.D. Cal. Dec. 17, 2010) (finding an extradition complaint sworn upon information and belief to be

sufficient); Rice v. Ames, 180 U.S. 371, 375 (1901) (stating, "We do not wish, however, to be understood as holding that, in extradition proceedings, the complaint must be sworn to by persons having actual knowledge of the offense charged."). The Court has already determined that the Treaty is in full force and effect despite instances where the Colombian government has denied the United States' requests for extradition. See Court's Order (DE# 59 at 7, 2/9/17) (stating, "[t]he fact that the Colombian government has, at times, refused some of the United States' requests for extradition is immaterial. It is not out of the ordinary that a country, for a multitude of reasons, refuses an extradition request.") (footnote omitted). Lastly, the Court is also not persuaded by Dr. Arias Leiva's standing argument. This is not an Article III proceeding. The United States is representing the interests of the government of Colombia in the instant proceedings pursuant to a valid Treaty and pursuant to section 3184.

## II. Jurisdiction Over the Fugitive

The Court finds that it has jurisdiction over Dr. Arias Leiva. Title 18, United States Code, Section 3184 gives the Court jurisdiction over a fugitive found within the Court's jurisdiction who has committed crimes in a foreign nation that are covered by an extradition treaty set forth in section 3181. The extradition treaty between the United States and Colombia is included in section 3181. Dr. Arias Leiva was arrested in Weston, Florida pursuant to an arrest warrant issued by this Court in conjunction with the issuance of the extradition complaint. See Arrest Warrant Return (DE# 20, 9/9/16).

Moreover, Dr. Arias Leiva does not dispute that the Court has personal jurisdiction.[4]

### III. <u>Treaty in Full Force and Effect</u>

For the reasons previously stated in the Court's Order (DE# 59, 2/9/17), the Court finds that there is an extradition treaty in full force and effect between the United States and Colombia, for all purposes of the extradition proceeding. See 18 U.S.C. § 3184.

### IV. <u>Crime Covered by the Treaty</u>

Article 1 of the Treaty provides for the return of persons found in the United States "who have been charged with an offense, found guilty of committing an offense, or are wanted by [Colombia] for the enforcement of a judicially pronounced penalty involving a deprivation of liberty for an offense, committed within the territory of [Colombia]." Treaty (DE# 82-1 at 2). Article 2 of the Treaty provides for extradition for "[o]ffenses described in the Appendix to [the] Treaty which are punishable under the laws of both [Colombia and the United States]." Id. The Appendix lists both fraud and embezzlement as extraditable offenses. Id. at 10.

"Under the principle of 'dual criminality,' not only must an offense fall under the rubric of extraditable offenses in the applicable treaty, but the acts constituting the offense must also be 'criminal in both jurisdictions.'" In re Extradition of Camelo-Grillo, No. CV 16-9026 JVS (SS), 2017 WL 2945715, at *6 (C.D. Cal. July 10, 2017) (quoting

---

[4] Dr. Arias Leiva's response to the complaint states that the "allegation of ¶8 is admitted insofar as it pertains to personal (as distinguished from subject-matter) jurisdiction." Response (DE# 85 at 2). Paragraph 8 of the complaint states that Dr. Arias Leiva may be found within the jurisdiction of this Court. Complaint (DE# 1 at ¶8).

Caplan v. Vokes, 649 F.2d 1336, 1343 (9th Cir. 1981)). "The dual criminality requirement ensures that the charged conduct is considered criminal and punishable as a felony in both the country requesting the suspect and the country surrendering the suspect." Ordinola v. Hackman, 478 F. 3d 588, 594 n. 7 (4th Cir. 2007). To determine whether dual criminality exists, an extradition court may look to federal law or the law of the state where the extradition proceeding is being held. See Hu Yau-Leung v. Soscia, 649 F.2d 914, 918 (2d Cir.1981). "The name by which the crime is described in the two countries need not be the same; nor is it necessary that the scope of liability for the crimes be coextensive." Camelo-Grillo, 2017 WL 2945715, at *6 (citing Collins v. Loisel, 259 U.S. 309, 312 (1922)). The Court need only find that "the 'essential character' of the acts criminalized by the law of each country are the same and the laws are 'substantially analogous.'" Id. (citing Manta v. Chertoff, 518 F.3d 1134, 1141 (9th Cir. 2008) (quoting Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1404 (9th Cir. 1988)). For the reasons stated below, the Court finds that the charges for which extradition is sought are crimes pursuant to both Colombian and United States law and are covered by the Treaty.

On July 16, 2014, the Supreme Court of Colombia convicted Dr. Arias Leiva of embezzlement for third parties in violation of Article 397 of the Colombian Criminal Code and conclusion of contract without fulfilling legal requirements in violation of Article 410 of the Colombian Criminal Code. See Colombia Supreme Court of Justice, Criminal Cassation Division, Case No. 37462, Approved Minutes 226, July 16, 2014

8

(hereinafter "Conviction").[5] The Supreme Court issued a lengthy opinion detailing its factual and legal findings supporting the convictions.

The charges against Dr. Arias Leiva stem from the distribution of public funds obtained through the Argo Ingreso Seguro ("AIS") program while he served as the Minister of Agriculture and Rural Development in a prior administration. The AIS program was enacted by the Colombian Congress "[i]n order to combat the challenges imposed on the Colombian farming sector due to the globalization of the economy, and particularly, the signature of free-trade agreements with a number of countries including the United States . . . ." Conviction at 2. "The program [was] conceived as public policy designed . . . to promote productivity and competitiveness, reduce inequality [in] rural areas, and prepare the farming sector to face up to the Internet needs challenges of internationalization of the economy." Id. at 3 (citation and internal quotation marks omitted).

Colombian law requires 'that as a general rule, the choice of contractor should be by public tender or public competition." Conviction at 73. An exception to the public bidding requirement exists where the objective of the contract is scientific or technical. Id.

In furtherance of the AIS program, Dr. Arias Leiva, as the Minister of Agriculture and Rural Development, entered into three agreements with the Instituto

---

[5] The Conviction issued by the Supreme Court of Colombia can be found as an unscanned attachment to Docket Entry 1 at pages 445 through 640. When citing to the Conviction, the Court will use the page numbers ascribed to the English translation located at the bottom of each page.

Interamericano de Cooperacion para la Agricultura ("IICA") in 2007, 2008 and 2009. Conviction at 3, 127.[6] These contracts were designated as scientific and technical cooperation agreements and as a result, the selection of IICA as the contractor bypassed a public bidding process. Id. at 120. The Supreme Court of Colombia held that none of the contracted responsibilities in the 2007, 2008 and 2009 agreements were scientific and/or technical as required by Colombian law. Id. at 76-96. The Supreme Court of Colombia concluded that the three contracts "did not have the object of developing actions considered to be scientific or technological in accordance with the exception provided in the legislative Decrees 393/1991 and 591/1991, which was an essential requirement to select this form of commitment." Id. at 96.

The Supreme Court of Colombia further determined that Dr. Arias Leiva acted knowingly in falsely designating the 2007, 2008 and 2009 agreements as scientific and technical. Id. at 120 (finding that Dr. Arias Leiva "(i) knew of his obligation to observe the administrative procurement statute; (ii) knew that need [sic] special arrangements for social science and technology could only have the activities indicated by the law as their object, which the law specified, and (iii) despite that, willingly sidestepped the rules, by processing and executing Agreements 3/2007, 55/2008 and 52/2009, which did not have scientific or technological activities as any part of their object" and that "[t]he purpose of this action was to legitimize the discretionary choice of IICA, which was determined by [Dr. Arias Leiva's] interest in executing funds allocated to the irrigation and drainage component as soon as possible, and he secured control of that

---

[6] These agreements are 3/2007, 55/2008 and 52/2009, respectively.

10

through the organization implemented in this type of juristic business.").

Millions of Colombian pesos were disbursed as a result of each of these contracts through request for proposals for the implementation of irrigation projects. Conviction at 121, 127-28. The money constituted AIS program funds and were therefore government funds. Id. at 127-28, 161. Eleven families received a disproportionate share of the funds. See, e.g., id. at 161 ("conclud[ing] that the eleven [families] . . . obtained in the [Request for Proposals] held in 2007 and 2008, a total of [Colombian Pesos] 25,087,449,066 of the AIS program, an amount corresponding to the crime of embezzlement by appropriation, in homogenous concurrence effected in favor of the beneficiaries.") (footnote omitted).

The Supreme Court of Colombia found that Dr. Arias Leiva "allowed [the] illegal appropriation of public funds by . . . third parties" through the following means:

> 1. Fictitious subdivision of property, to present projects linked to the resulting properties, as if they were from different farms.
>
> 2. Allocation and delivery in identical or successive [Request for Proposals], of several subsidies to the same family or business groups.
>
> 3. Obtaining subsidies for projects which did not satisfy the technical requirements of the [Request for Proposals], through a reclassification not provided for in the context, and made by in [sic] "group of experts."

Conviction at 143.

The Supreme Court of Colombia determined that Dr. Arias Leiva "knew of the illegality of his conduct and voluntarily carried it out." See, e.g., Conviction at 162 (noting that Dr. Arias Leiva maintained "strict control of the management of the resources" and failed to consider a report by the Econometria S.A. concerning the

subdivision of property);[7] id. at 164 (noting that "the allocation of subsidies for projects on properties with the same name was evident."). It further determined that Dr. Arias' conduct "damage[d] . . . the juristic interests of public administration, whose function is amongst others, that of being at the service of the general interest." Id. at 124.

### a. Embezzlement for Third Parties

The offense of embezzlement for third parties would be subject to prosecution in the United States under 18 U.S.C. § 641[8] for the reasons discussed below.

To obtain a conviction under "18 U.S.C. § 641, the government . . . [must] prove . . . beyond a reasonable doubt: '(1) that the money or property belonged to the government; (2) that the defendant fraudulently appropriated the money or property to his own use or the use of others; [and] (3) . . . that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of the use of the money or property.'" United States v. Slaton, 801 F.3d 1308, 1316 (11th Cir. 2015) (quoting United States v. McRee, 7 F.3d 976, 980 (11th Cir. 1993) (en banc)). Additionally, the money or property must have a value greater than $1,000. 18 U.S.C. § 641.

---

[7] Dr. Arias Leiva states that the report has not been provided to him and "[w]ithout context, there is no way to know whether Colombia is accurately representing its content." Response (DE# 85 at 36). Dr. Arias Leiva ignores the limited nature of extradition proceedings which do not permit an extraditee to refute the evidence presented by the requesting state. See In re Extradition of Nunez-Garrido, 829 F. Supp. 2d 1277, 1281 (S.D. Fla. 2011).

[8] The government argues that Dr. Arias Leiva's conduct was also subject to prosecution under 18 U.S.C. § 666. It is not necessary for the Court to address this argument because to satisfy the dual criminality requirement, it is sufficient that the conduct was punishable under section 641.

12

As summarized above, the money distributed by the IICA constituted public funds belonging to the government of Colombia. The money was diverted to the same eleven families through fraudulent means (fictitious subdivision of property, identical or successive request for proposals, of several subsidies to the same family or business groups, obtaining subsidies for projects which did not satisfy the technical requirements of the request for proposals). The funds were knowingly and willfully diverted and were in excess of the $1,000 statutory threshold.

Dr. Arias Leiva argues that the dual criminality requirement cannot be met. Dr. Arias Leiva argues that he was convicted of "fail[ing] to prevent . . . *others* from committing fraud" which is not a crime in the United States. Response (DE# 85 at 36) (italics in original). However, the Supreme Court of Colombia found that Dr. Arias Leiva did more than fail to prevent the eleven families from obtaining a disproportionate share of funds earmarked for the implementation of irrigation projects. The Supreme Court of Colombia's opinion details how Dr. Arias Leiva's conduct facilitated the embezzlement of government funds by allowing the fictitious subdivision of property, the allocation of delivery of identical or successive requests for proposals from the same family or business groups and permitting the reclassification of previously rejected requests for proposals which did not meet technical requirements. Conviction at 143. The Supreme Court of Colombia found that Dr. Arias Leiva "knew of the illegality of his conduct and voluntarily carried it out." Id.

Dr. Arias Leiva further argues that the conduct for which he was convicted would not be a crime in the United States because there was no quid pro quo. Response

13

(DE# 85 at 37). Dr. Arias Leiva cites McDonnell v. United States, 136 S. Ct. 2355 (2016). However, that case did not involve a conviction under section 641. The Court finds no support for the requirement of a quid pro quo for a conviction under section 641.

The Court finds no First Amendment impediment to Dr. Arias Leiva's prosecution had it taken place in the United States. Dr. Arias Leiva argues that "a further constitutional obstacle to the Colombian theory of prosecution" exists because "calling donations to a politician who implements policies that advantage his supporters 'embezzlement' violates the First Amendment." Response (DE# 85 at 39). Dr. Arias Leiva was not prosecuted for taking political contributions. He was prosecuted for his actions in diverting money to the same eleven families through fraudulent means. The First Amendment does not apply to fraud. See Illinois ex rel. Madigan v. Telemarketing Assocs., Inc., 538 U.S. 600, 612 (2003).

Dr. Arias Leiva further states that he could not have been prosecuted under section 641 had his conduct occurred in the United States because the record does not support a finding that Dr. Arias Leiva acted willfully in diverting funds. Response (DE# 85 at 40). The Colombian Supreme Court found that Dr. Arias Leiva acted willfully based on its review of the evidence. See Conviction at 162, 164. Given the limited nature of extradition proceedings, this Court cannot re-weigh the evidence and supplant the factual findings of the Supreme Court of Colombia. See In re Extradition of Nunez–Garrido, 829 F. Supp. 2d 1277, 1281 (S.D. Fla. 2011) (noting that "[b]ecause of the circumscribed nature of an extradition proceeding, the importance of international

14

obligations and the inherent practical difficulties in international proceedings, a defendant's right to challenge evidence against him at an extradition hearing is limited.").

Dr. Arias Leiva also argues that his prosecution in the United States would not be possible because the question of "[w]hether Dr. Arias should or should not have 'allowed' large landholders to subdivide their parcels to qualify for larger subsidies from a government program is exactly the sort of political question courts do not decide." Response (DE# 85 at 38). In a similar vein, Dr. Arias Leiva argues that "the decision [by the Ministry of Agriculture and Rural Development] that an agreement [was] 'for' the scientific expertise of an established international organization dedicated to promoting agriculture in th[e] hemisphere" is "a non-justiciable policy determination." Id. at 46. Dr. Arias Leiva also argues that his prosecution in the United States would be precluded by the act-of-state doctrine. Response (DE# 85 at 49-54).

The political question doctrine and the act-of-state doctrine do not prevent a finding of dual criminality. "The dual criminality requirement does not consider possible affirmative defenses or procedural rules that would bar prosecution by the requesting or requested party. The question is whether the fugitive's acts would be criminal in both countries." Camelo-Grillo, 2017 WL 2945715, at *9. Thus, the Court will not consider whether the political question doctrine or the act of state doctrine would preclude Dr. Arias Leiva's prosecution had his conduct occurred in the United States. See In the Matter of the Extradition of Ricardo Alberto Martinelli Berrocal, No. 17-22197-CIV, 2017 WL 3776953, at *27 (S.D. Fla. Aug. 31, 2017) (stating that "[i]t is well established that

15

an immunity defense – which is undeniably an affirmative defense – is not a proper consideration in an extradition proceeding.").

### b. Conclusion of Contract Without Fulfilling Legal Requirements

The offense of conclusion of contract without fulfilling legal requirements would be subject to prosecution in the United States under 18 U.S.C. § 1001. To obtain a conviction under § 1001, the government must prove "'(1) that the defendant made a false statement; (2) that the statement was material; (3) that the defendant acted with specific intent to mislead; and (4) that the matter was within the purview of a federal government agency.'" United States v. Rosario, 520 F. App'x 928, 929 (11th Cir. 2013) (quoting United States v. McCarrick, 294 F.3d 1286, 1290 (11th Cir. 2002)).

The charge of conclusion of contract without fulfilling legal requirements is based on the false designation of the contracts between the Ministry of Agriculture and Rural Development and the IICA as scientific and technical cooperation agreements in order to bypass the public bidding requirement. The Supreme Court of Colombia determined that Dr. Arias Leiva was directly involved in selecting the IICA to administer AIS program funds. The IICA contracts were falsely designated as scientific and technical cooperation agreements to bypass a public bidding requirement. The record shows these false designations were material in that they permitted Dr. Arias Leiva to bypass the public bidding process and thereby exercise greater control over the decisions of the IICA. The Supreme Court of Colombia further found that the false designations were made willfully. Lastly, the matter was within the purview of the Ministry of Agriculture and Rural Development.

16

Dr. Arias Leiva argues that he would not be subject to prosecution under section 1001 because "[t]he Colombian statute does not in any way relate to making false statements." Response (DE# 85 at 42). Moreover, Dr. Arias Leiva insists that the subject contracts meet the requirement of scientific or technological activity. Id. at 43 (stating that "[t]he designation of the agreements with IICA as being for 'scientific or technological activities' is governed by such broad standards that it is impossible to say that an agreement for an irrigation project is not of that type.").

The false designation of the subject contracts as scientific and technological meets the requirement of a false statement under section 1001. A finding of dual criminality is not precluded merely because some of the elements of the offense of conclusion of contract without fulfilling legal requirements differ from the elements of section 1001. Camelo-Grillo, 2017 WL 2945715, at *6. Additionally, the Supreme Court of Colombia's determination of what constitutes scientific or technological activity under Colombian law will not be re-examined by this Court. See Casey v. Dep't of State, 980 F.2d 1472, 1477 (D.C. Cir. 1992).

In sum, the offense of embezzlement for third parties would be subject to prosecution in the United States under 18 U.S.C. § 641 and the offense of conclusion of contract without fulfilling legal requirements would be subject to prosecution in the United States under 18 U.S.C. § 1001. Section 641 is punishable by a term of up to ten years imprisonment. Section 1001 is punishable by a term of up to five years imprisonment. The dual criminality requirement is met.

## V. **Probable Cause that the Fugitive Committed the Offenses**

Ordinarily, the Court's responsibility in determining probable cause, as to each charged offense in an extradition proceeding, is to determine whether, under the

applicable extradition treaty, there is enough evidence to sustain the charges alleged in the complaint. See Matter of Extradition of Lahoria, 932 F. Supp. 802, 805 (N.D. Tex. 1996). However, where the extraditee has been convicted by the requesting state at a trial where he was present and represented by counsel, the Court does not need to undertake an independent probable cause determination. See Spatola v. United States, 925 F.2d 615, 618 (2d Cir. 1991) (agreeing with the district court's determination "that in those cases where 'there has been a judgment of conviction [entered by a foreign court], there is no need for an "independent" determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause.'"). Dr. Arias Leiva argues that the Court must undertake an independent probable cause determination because "the proposition that a foreign conviction automatically establishes probable cause . . . does not apply to the judgments of politicized courts." Response (DE# 85 at 55) (emphasis omitted). Dr. Arias Leiva cites no legal authority for this proposition. Moreover, an extradition court does not look into the motives of the requesting state. See United States v. Ramnath, 533 F. Supp. 2d 662, 672 (E.D. Tex. 2008) (stating that "[t]he well-established 'rule of non-inquiry' prohibits a requested-state court from investigating motives of the requesting state or fairness of the justice system of the requesting state when determining extradition.") (footnote omitted).

The Court finds that Dr. Arias Leiva's conviction – rendered after a lengthy trial for which Dr. Arias Leiva was present and represented by counsel – meets the requirement that the Court find there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.[9]

---

[9] There is substantial probable cause within the record independent of the conviction.

18

## **CONCLUSION**

Based on the foregoing, this matter is certified to the Secretary of State in order that a warrant may issue, upon the requisition of the proper authorities of Colombia, for the surrender of Andres Felipe Arias Leiva relating to the embezzlement for third parties in violation of Article 397 of the Colombian Criminal Code and conclusion of contract without fulfilling legal requirements in violation of Article 410 of the Colombian Criminal Code, according to the provisions of the Treaty between the United States and Colombia.

It is hereby

ORDERED AND ADJUDGED that Andres Felipe Arias Leiva be committed to the custody of the United States Marshal, or an authorized representative, to be confined in appropriate facilities and to remain there until he is surrendered to Colombia pursuant to applicable provisions of the Treaty and law; and it is further

ORDERED AND ADJUDGED that the United States Attorney for this judicial district shall forward a copy of this Certification and Order, together with a copy of all transcripts of proceedings and copies of documents received into evidence in this matter to the Secretary of State.

DONE AND ORDERED in Chambers, at Miami, Florida, this **29th** day of September, 2017.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record
U.S. Marshals (2 certified)